Chief Magistrate Judge Brian A. Tsuchida

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AUSTIN HSU,<br><br>Defendant. | CASE NO. MJ20-691<br><br>COMPLAINT for VIOLATIONS OF<br><br>Title 18, United States Code, Sections 1343, 2 |

BEFORE, Brian A. Tsuchida, United States Magistrate Judge, U.S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1
### (Wire Fraud)

From in or around April 2020 through in or around August 2020, at Issaquah, in the Western District of Washington and elsewhere, AUSTIN HSU, the defendant, knowingly devised and intended to devise a scheme and artifice to defraud financial institutions and the United States, and to obtain money and property by means of material false and fraudulent pretenses, representations and promises, and attempted to do so.

COMPLAINT/*United States v. Austin Hsu* - 1
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A. <u>Manner and Means</u>

1. It was part of the scheme that HSU submitted, or caused to be submitted, fraudulent loan applications to Lenders 1 and 2 seeking hundreds of thousands of dollars in funds through the Paycheck Protection Program ("PPP"), on behalf of Evergreen Forest Inc. ("Evergreen"), Huggtopus Corporation ("Huggtopus"), Prodigy Holdings PLLC. ("Prodigy"), and Sequoia West Corporation ("Sequoia").

2. It was further part of the scheme to defraud that HSU submitted fraudulent loan applications to the U.S. Small Business Administration ("SBA"), seeking hundreds of thousands of dollars in funds through the COVID-19 Economic Injury Disaster Loan ("EIDL") program on behalf of Evergreen, Huggtopus, and Sequoia.

3. It was further part of the scheme to defraud that HSU submitted a fraudulent loan application to the SBA, seeking approximately $150,000 in funds through the EIDL program on behalf of Blueline Capital LLC ("Blueline").

4. In support of Blueline's fraudulent loan application, HSU made numerous materially false and misleading statements, including, but not limited to: (a) Blueline was established on April 3, 2017 and that HSU had owned Blueline since that date; (b) Blueline had 9 employees as of January 31, 2020; and (c) Blueline's gross revenue for the twelve months ending January 31, 2020 was $1,509,920.

B. <u>Execution</u>

On or about August 3, 2020, at Issaquah, in the Western District of Washington and elsewhere, HSU, for the purpose of executing the scheme described above transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, to wit, an interstate wire from Denver, Colorado, to Seattle, Washington, as part of the wire transfer in the amount of $149,900 from the SBA's bank account to HSU's bank account at Financial Institution 3.

//

COMPLAINT/*United States v. Austin Hsu* - 2
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

All in violation of Title 18, United States Code, Sections 1343 and 2.

I, ALAN KEENE, being first duly sworn on oath, depose and say:

1. I am a Special Agent for the Treasury Inspector General for Tax Administration ("TIGTA"), Seattle, Washington Field Office. I have been employed as a Special Agent of the TIGTA since September 2007. I have received basic federal law enforcement training, including at the Federal Law Enforcement Training Center, as well as other specialized federal law enforcement training. I have investigated violations of federal statutes, including wire fraud, mail fraud, money laundering, conspiracy and theft of government and public money. I have been a sworn law enforcement officer during all times herein.

2. The information contained in this Complaint is the result of my own investigation as well as information provided to me by others, including other investigators and law enforcement officers. In each instance when I recite information from such others, I have gained that information either by talking directly to such investigators and law enforcement officers or reviewing written reports of their investigation, or both. This Complaint accurately summarizes some of the evidence I discovered during my investigation; it does not, however, contain every detail known to me about the investigation.

## FACTS ESTABLISHING PROBABLE CAUSE

*The Paycheck Protection Program*

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP. In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

COMPLAINT/*United States v. Austin Hsu* - 3
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

5. A PPP loan application must be processed by a participating financial institution (the lender). If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration (SBA). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

6. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

*The Economic Injury Disaster Relief Program*

7. The EIDL program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

8. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The

COMPLAINT/*United States v. Austin Hsu* - 4
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

amount of the advance is determined by the number of employees the applicant certifies having. The advances do not have to be repaid.

9. In order to obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant must also certify that all of the information in the application is true and correct to the best of the applicant's knowledge.

10. EIDL applications are submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application is approved, is determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance are issued directly by the SBA. EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

*The Defendant and Other Relevant Individuals and Entities*

11. HSU is a United States citizen residing in Issaquah, Washington.

12. Person 1 is a United States citizen who resides with HSU.

13. Blackrock Services P.S. (d/b/a "Back 2 Health Bellevue") ("Blackrock") is a Washington professional service corporation with offices in Bellevue, Washington. Blackrock offers chiropractic treatment and rehabilitation care. HSU is Blackrock's owner and CEO. Person 1 is Blackrock's Managing Director.

14. Evergreen was a Washington corporation first registered on or about December 12, 2013. HSU is Evergreen's owner and CEO.

15. Huggtopus was a Washington corporation first registered on or about June 17, 2014. HSU is Huggtopus's CEO and Managing Partner.

COMPLAINT/*United States v. Austin Hsu* - 5
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16. Prodigy was a Washington corporation first registered on or about July 13, 2018. HSU is Prodigy's CEO.

17. Sequoia was a Washington corporation first registered on or about May 8, 2018. HSU is Sequoia's CEO.

18. Blueline was a Wyoming corporation first registered on or about June 26, 2020. HSU is Blueline's CFO.

*Overview of the Fraud*

19. As described further below, evidence gathered in the investigation demonstrates that, from in or around April 2020 through in or around August 2020, HSU submitted, or caused to be submitted, fraudulent loan applications to approved lenders and the SBA in order to obtain funds through the PPP and EIDL program. Among other things, HSU fraudulently used the names of current and former Blackrock employees to obtain PPP loans on behalf of Evergreen, Huggtopus, Prodigy, and Sequoia.[1] HSU misrepresented that these current and former Blackrock employees had also worked for and been paid by these other companies, when, in truth, they had not.

20. In connection with this fraud, HSU submitted, or caused to be submitted, the following fraudulent loan applications:

| Applicant | Amount Sought | Lender | Approx. Date of Application | Status |
|---|---|---|---|---|
| Sequoia | $54,627.97 | Lender 1 | 4/27/2020 | Approved |
| Prodigy | $105,451 | Lender 2 | 5/7/2020 | Approved |
| Evergreen | $133,275 | Lender 2 | 5/10/2020 | Approved |
| Huggtopus | $115,751 | Lender 2 | 5/13/2020 | Approved |
| Evergreen | $150,000 | SBA | 3/29/2020 | Approved |

---

[1] In March and April 2020, HSU applied for EIDL and PPP loans on behalf of Blackrock seeking a total amount of $219,100. Those loan applications, which were approved and funded, are not the subject of this Complaint.

COMPLAINT/*United States v. Austin Hsu* - 6
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Huggtopus | $150,000 | SBA | 5/17/2020 | Canceled |
| Huggtopus | $150,000 | SBA | 7/12/2020 | Canceled |
| Sequoia | $150,000 | SBA | 7/12/2020 | Canceled |
| Blueline | $150,000 | SBA | 7/12/2020 | Approved |
| **TOTAL:** | $1,159,104.97 | | | |

21. HSU distributed fraudulently obtained PPP loan proceeds to himself and Person 1.

*Fraudulent PPP Loan Application Submitted on Behalf of Sequoia*

22. According to records obtained from Lender 1, on or about April 27, 2020, HSU applied to Lender 1 for a PPP loan on behalf of Sequoia in the amount of $54,627.97 via Lender 1's online application portal. Based on records obtained from Comcast, HSU accessed the online application portal using an Internet Protocol ("IP") address associated with Address 1, which was the residential address HSU shared with Person 1.

23. In the application, HSU represented that Sequoia had 12 employees.

24. Based on records obtained from Lender 1, HSU submitted several documents in support of Sequoia's PPP loan application, including:

   a. Internal Revenue Service ("IRS") Form 940, in which HSU represented that Sequoia had made $242,182.22 in total payments to Sequoia's employees in 2019. HSU further represented that Sequoia had deposited $12,850.92 in federal unemployment taxes in 2019.

   b. An IRS Form 941, in which HSU represented that Sequoia had paid its employees tips, wages and other compensation for January, February and March 2020 totaling $95,115.65. HSU further represented that Sequoia had deposited $23,565.82 in federal unemployment taxes for the first quarter of 2020.

   c. A copy of HSU's driver license.

COMPLAINT/*United States v. Austin Hsu* - 7
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

25. The Sequoia PPP application represented that the business employed 12 employees. Evidence gathered in the government's investigation demonstrates that this statement is false:

    a. Information obtained from the Washington State Employment Security Department ("ESD") shows the agency has no record of any employees being employed by Sequoia.

    b. Information obtained from the Social Security Administration ("SSA") revealed that Sequoia did not file any Forms W-2 or W-3 for any employees for 2019.

    c. Payroll records obtained from Intuit, a payroll processor, show Sequoia did not make any payroll payments in 2019 or in the first quarter of 2020.

    d. Information obtained from the Washington State Department of Revenue ("DoR") revealed that Sequoia had not registered with DoR or applied for a business license.

26. The IRS Forms 940 and 941 submitted with the Sequoia PPP application also appear to be fraudulent. Records from the IRS confirm that these returns had not been filed with the IRS and the amounts of tax deposits reported on the Forms 940 and 941 were not paid to the IRS. In fact, Sequoia had not filed employment tax or federal income tax returns with the IRS in 2019 or 2020, and had not made employment tax deposits in 2019 or 2020.

27. According to records obtained from Lender 1, it approved Sequoia's PPP application and funded the loan. According to records obtained from Financial Institution 1, on or about May 4, 2020, Lender 1 transferred $54,627.97 to a bank account in the name of Blackrock at Financial Institution 1, for which HSU was the sole signatory.

*Fraudulent PPP Loan Application Submitted on Behalf of Prodigy*

28. According to records obtained from Lender 2, on or about May 7, 2020, Lender 2 received a PPP application in the name of Prodigy seeking a PPP loan in the amount of $105,451. The application was submitted in the name of Person 1, who was represented to be Prodigy's majority owner. Based on records obtained from Comcast, the

COMPLAINT/*United States v. Austin Hsu* - 8
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

PPP loan documents were digitally signed using an IP address associated with Address 1, which was the residential address HSU shared with Person 1.[2]

29. In the Prodigy PPP application, an individual purporting to be Person 1 represented that Prodigy had 14 employees and that its average monthly payroll was $42,181.

30. In the Prodigy PPP application, an individual purporting to be Person 1 made several certifications, including that Prodigy "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors."

31. Based on records obtained from Lender 2, several documents were submitted in support of Prodigy's PPP loan application, including: (a) a Form 940, which represented that Prodigy had made $506,169.11 in total payments to Prodigy's employees in 2019; (b) Forms W-2 and W-3 for 21 individuals who were purportedly employed by Prodigy in 2019; and (c) a copy of Person 1's driver license.

32. The government's investigation has revealed that Prodigy's application to Lender 2 contained materially false and misleading information.

    a. Information obtained from the SSA revealed that Prodigy did not file any Forms W-2 or W-3 for any employees for 2019.

    b. In or around September and October 2020, law enforcement interviewed three individuals listed as purported Prodigy employees. All three employees confirmed they had never been paid by Prodigy; rather, they were all paid employees of BlackRock (which received its own separate PPP loan).[3]

    c. Further investigation revealed that all of the names listed as employees on the Prodigy PPP application were also used in the fake Evergreen and

---

[2] On or about October 7, 2020, a recorded call was made to Person 1 by an investigator posing as an employee of the SBA. The investigator made the call to Phone Number 1, which was the same phone number listed on an EIDL application in the name of Prodigy. On the recorded call, Person 1 stated that she had not filed Prodigy's PPP application herself, but that HSU had filed it for her.

[3] These individuals, who were also listed as Evergreen and Huggtopus employees, also confirmed they had never been paid by these companies; rather, they were all paid employees of BlackRock.

COMPLAINT/*United States v. Austin Hsu* - 9
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

        Huggtopus Forms W-2 and W-3 (described below). In many cases, the reported wages and withholdings for these individuals were identical or nearly identical across the three companies.

    d. Additionally, information obtained from the IRS further revealed that Prodigy's Employer Identification Number ("EIN") had only been created on April 27, 2020 (*i.e.*, two weeks before Prodigy's PPP loan application was submitted), and that in the EIN application, which listed HSU as the responsible party and was filed from an IP address registered to Address 1, HSU represented that Prodigy would not have any employees during the following 12-month period.

33. According to records obtained from Lender 2, it approved Prodigy's application and funded the loan. According to records obtained from Financial Institution 1, on or about May 11, 2020, Lender 2 transferred $105,451 to Prodigy's bank account at Financial Institution 1, for which HSU was the sole signatory.

*Fraudulent PPP Loan Application Submitted on Behalf of Evergreen*

34. According to records obtained from Lender 2, on or about May 10, 2020, Lender 2 received a PPP application in the name of Evergreen seeking a PPP loan in the amount of $133,275. The application was submitted in the name of HSU, who was represented to be Evergreen's sole owner and CEO. Based on records obtained from Comcast, HSU digitally signed the PPP loan documents using an IP address associated with Address 1, which was the residential address HSU shared with Person 1.

35. The application represented that Evergreen had 13 employees and that its average monthly payroll was $53,310. Several documents were submitted in support of Evergreen's PPP loan application, including Forms W-2 and W-3 for 22 individuals who were purportedly employed by Evergreen in 2019.

36. The government's investigation has revealed that Evergreen's application to Lender 2 contained materially false and misleading information.

    a. Information obtained from the SSA revealed that Evergreen did not file any Forms W-2 or W-3 for any employees for 2019.

    b. Nearly all of the names listed as employees of Evergreen were also listed in the fake Prodigy and Huggtopus Forms W-2 and W-3 described above

COMPLAINT/*United States v. Austin Hsu* - 10
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and below and, in many cases, the reported wages and withholdings for these individuals were identical or nearly identical across the three companies.

c. Information obtained from the IRS revealed that Evergreen had not filed employment tax or federal income tax returns in 2019 or 2020, nor did Evergreen make employment tax deposits during 2019 or 2020. In fact, HSU had only applied for an EIN for Evergreen on May 6, 2020 (*i.e.*, four days before HSU submitted Evergreen's PPP loan application).

d. Information obtained from the ESD shows the agency has no record of any employees being employed by Evergreen.

e. Information obtained from the DoR revealed that when, on June 1, 2020, Evergreen applied to renew its business license, HSU indicated Evergreen had only 3 employees (not 13). HSU also listed Evergreen's annual gross income as between $0 and $12,000.

37. According to records obtained from Lender 2, it approved Evergreen's application and funded the loan. According to records obtained from Financial Institution 1, on or about May 12, 2020, Lender 2 transferred $133,275 to Sequoia's bank account at Financial Institution 1, for which HSU was the sole signatory.

*Fraudulent PPP Loan Application Submitted on Behalf of Huggtopus*

38. According to records obtained from Lender 2, on or about May 13, 2020, Lender 2 received a PPP application in the name of Huggtopus seeking a PPP loan in the amount of $115,751. The application was submitted in the name of HSU, who was represented to be one of Huggtopus's owners and its Managing Partner. Based on records obtained from Comcast, HSU digitally signed the PPP loan documents on May 13, 2020 and logged into the online application portal using an IP address associated with Address 1, which was the residential address HSU shared with Person 1.

39. In the application, HSU represented that Huggtopus had 12 employees and that its average monthly payroll was $46,301. Several documents were submitted in support of Huggtopus's PPP loan application, including: (a) Forms W-2 and W-3 for 21 individuals who were purportedly employed by Huggtopus in 2019 and (b) a copy of HSU's driver license.

COMPLAINT/*United States v. Austin Hsu* - 11
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

40. The government's investigation has revealed that Huggtopus's application to Lender 2 contained materially false and misleading information.

   a. Information obtained from the SSA revealed that Huggtopus did not file any Forms W-2 or W-3 for any employees for 2019.

   b. All of the names listed as employees of Huggtopus were also listed in the fake Prodigy and Evergreen Forms W-2 and W-3 described above and, in many cases, the reported wages and withholdings for these individuals were identical or nearly identical across the three companies.

   c. Information obtained from the ESD shows the agency has no record of any employees being employed by Huggtopus.

   d. Information obtained from the IRS revealed that Huggtopus had not filed any employment tax or federal income tax returns with the IRS in 2019 or 2020, nor did Huggtopus make any employment tax deposits during 2019 or 2020.

   e. Payroll records obtained from Intuit show Huggtopus did not make any payroll payments in 2019 or in the first quarter of 2020.

   f. Information obtained from the DoR revealed that Huggtopus's business license had been administratively revoked on June 30, 2019.

41. According to records obtained from Lender 2, it approved Huggtopus's application and funded the loan. According to records obtained from Financial Institution 1, on or about May 15, 2020, Lender 2 transferred $115,751 to Blackrock's bank account at Financial Institution 1, for which HSU was the sole signatory.

*Fraudulent EIDL Loan Application Submitted on Behalf of Evergreen*

42. According to records obtained from the SBA, on or about March 29, 2020, the SBA received an application in the name of Evergreen seeking an EIDL loan in the amount of $150,000. The application was submitted in the name of HSU via the SBA's online portal.

43. HSU falsely certified Evergreen "is not engaged in any activity that is illegal under federal, state, or local law." Records obtained from the Washington State Liquor and Cannabis Board revealed that Evergreen is operated as a recreational marijuana producer. The manufacture of a controlled substance, such as marijuana, is illegal under

COMPLAINT/*United States v. Austin Hsu* - 12
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

federal law Title 18, United States Code, Section 841, Manufacture of a Controlled Substance.

44. The SBA approved Evergreen's application and funded the loan. On or about June 29, 2020, the SBA wired $149,900 to Evergreen's bank account at Financial Institution 2, for which HSU is the sole signatory.

*Fraudulent EIDL Loan Applications Submitted on Behalf of Huggtopus*

45. According to records obtained from the SBA, on or about May 17, 2020, the SBA received an application in the name of Huggtopus seeking an EIDL loan in the amount of $150,000. On or about July 12, 2020, the SBA received a second application in the name of Huggtopus seeking an EIDL loan in the same amount. Both applications were submitted in the name of HSU via the SBA's online portal.

46. These applications contained conflicting information:

   a. In the first application, HSU represented that Huggtopus was in the agriculture industry, and that, in the 12 months prior to the disaster, Huggtopus had 13 employees, gross receipts of $1,218,092, and cost of goods sold of $324,901.

   b. In the second application, HSU represented that Huggtopus was in the health care services industry, and that, in the 12 months prior to the disaster, Huggtopus had 9 employees, gross receipts of $1,490,230 and cost of goods sold of $340,290.

47. As described above in paragraph 40, evidence gathered in the government's investigation demonstrates that these statements about the number of employees are false.

48. The SBA denied Huggtopus's fraudulent applications as duplicative.

*Fraudulent EIDL Loan Application Submitted on Behalf of Sequoia*

49. According to records obtained from the SBA, on or about July 12, 2020, the SBA received an application in the name of Sequoia seeking an EIDL loan in the amount of $150,000. The application was submitted in the name of HSU via the SBA's online portal.

COMPLAINT/*United States v. Austin Hsu* - 13
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

50. In the application, HSU represented that Sequoia had 12 employees. As described above in paragraph 25, evidence gathered in the government's investigation demonstrates that this statement is false.

51. The SBA denied Sequoia's fraudulent application as duplicative.

*Fraudulent EIDL Loan Application Submitted on Behalf of Blueline*

52. According to records obtained from the SBA, on or about July 12, 2020, the SBA received an application in the name of Blueline seeking an EIDL loan in the amount of $150,000. The application was submitted in the name of HSU, who was represented to be Blueline's sole owner and Chief Financial Officer. HSU submitted the application via the SBA's online portal.

53. In the application, HSU represented that Blueline was established on April 3, 2017 and that he has owned Blueline since that time. HSU also represented that Blueline had 9 employees.

54. The SBA approved Blueline's application and funded the loan. On or about August 3, 2020, the SBA sent $149,900 via an interstate wire from the SBA's bank account in Denver, Colorado to HSU's bank account at Financial Institution 3 in Seattle, Washington, for which he is the sole signatory.

55. The government's investigation has revealed that Blueline's application to the SBA contained materially false and misleading statements.

56. HSU's representation that Blueline was established on April 3, 2017 and that HSU has owned Blueline since that time is false:

   a. According to records obtained from the Wyoming Secretary of State and Cloud Peak Law, LLC, Blueline was formed on June 26, 2020 at HSU's request.

   b. IRS records show that the EIN for Blueline was created on or about June 29, 2020 using Person 2's personal information.

   c. On October 13, 2020, law enforcement interviewed Person 2 and Person 2 confirmed that they entered into an agreement with HSU to form Blueline to sell facemasks beginning in August 2020.

COMPLAINT/*United States v. Austin Hsu* - 14
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

57. HSU's representations that, during prior 12 months leading to the disaster, Blueline had 9 employees, $1,509,920 in gross receipts and $628,990 in cost of goods sold, are false:

   a. IRS records show that the EIN for Blueline was created on or about June 29, 2020 using Person 2's personal information.

   b. On October 13, 2020, Person 2 was interviewed and confirmed that Blueline did not have any employees or sales.

   c. Information obtained from the DoR revealed that Blueline had not registered with DoR or applied for a business license.

## CONCLUSION

58. Based on the above facts, I respectfully submit that there is probable cause to believe that AUSTIN HSU did willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, and attempting to do so, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 2.

_____
ALAN KEENE, Complainant
Special Agent, TIGTA

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit, and based on the Complaint and Affidavit, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this 26th day of October, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

COMPLAINT/United States v. Austin Hsu - 15
USAO No. 2020R01008

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970