UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR20-191-JLR |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| AUSTIN HSU, | |
| Defendant. | |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, Steven Masada, Assistant United States Attorney for said District, Daniel S. Kahn, Acting Chief, Fraud Section, Criminal Division, United States Department of Justice, and Christopher Fenton, Trial Attorney for said Section, Defendant, AUSTIN HSU, and Defendant's attorney, Brent Hart, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) & (B):

1.     **Waiver of Indictment**. Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charge brought by the United States Attorney in an Information.

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    2.    **The Charge**. Defendant, having been advised of the right to have this

2  matter tried before a jury, agrees to waive that right and enter a plea of guilty to the

3  charge of Wire Fraud, in violation of Title 18, United States Code, Section 1343,

4  contained in the Information. By entering a plea of guilty, Defendant hereby waives all

5  objections to the form of the charging document. Defendant further understands that,

6  before entering any guilty plea, Defendant will be placed under oath. Any statement

7  given by Defendant under oath may be used by the United States in a prosecution for

8  perjury or false statement.

9    3.    **Elements of the Offense**. The elements of the offense of Wire Fraud to

10  which Defendant is pleading guilty are as follows:

11      First, Defendant knowingly devised or participated in a scheme or plan to defraud,

12  or a scheme or plan for obtaining money or property by means of false or fraudulent

13  pretenses, representations, or promises, or omitted facts;

14      Second, the statements made or facts omitted as part of the scheme were material;

15  that is, they had a natural tendency to influence, or were capable of influencing, a person

16  to part with money or property;

17      Third, Defendant acted with the intent to defraud; that is, the intent to deceive and

18  cheat; and

19      Fourth, the defendant used, or caused to be used, an interstate or foreign wire

20  communication to carry out or attempt to carry out an essential part of the scheme.

21    4.    **The Penalties**. Defendant understands that the statutory penalties

22  applicable to the offense of Wire Fraud to which he is pleading guilty are as follows:  a

23  maximum term of imprisonment of up to twenty (20) years, a fine of up to two hundred

24  fifty thousand dollars ($250,000), a period of supervision following release from prison

25  of up to three (3) years, and a mandatory special assessment of one hundred dollars

26  ($100). If a probationary sentence is imposed, the probation period can be for up to five

27  (5) years.

28

Plea Agreement - 2
*United States v. Austin Hsu*, CR20-191-JLR

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Defendant understands that supervised release is a period of time following
2  imprisonment during which Defendant will be subject to certain restrictive conditions and
3  requirements.  Defendant further understands that, if supervised release is imposed and
4  Defendant violates one or more of the conditions or requirements, Defendant could be
5  returned to prison for all or part of the term of supervised release that was originally
6  imposed.  This could result in Defendant serving a total term of imprisonment greater
7  than the statutory maximum stated above.

8  Defendant understands that, as a part of any sentence, in addition to any term of
9  imprisonment and/or fine that is imposed, the Court may order Defendant to pay
10  restitution to any victim of the offense, as required by law.

11  Defendant further understands that the consequences of pleading guilty may
12  include the forfeiture of certain property, either as a part of the sentence imposed by the
13  Court or as a result of civil judicial or administrative process.

14  Defendant agrees that any monetary penalty the Court imposes, including the
15  special assessment, fine, costs, and restitution, is due and payable immediately and
16  further agrees to submit a completed Financial Statement of Debtor form as requested by
17  the United States Attorney's Office.

18  5.      **Rights Waived by Pleading Guilty.**  Defendant understands that, by
19  pleading guilty, Defendant knowingly and voluntarily waives the following rights:

20          a.      The right to plead not guilty and to persist in a plea of not guilty;
21          b.      The right to a speedy and public trial before a jury of Defendant's
22                  peers;
23          c.      The right to the effective assistance of counsel at trial, including, if
24                  Defendant could not afford an attorney, the right to have the Court
25                  appoint one for Defendant;
26          d.      The right to be presumed innocent until guilt has been established
27                  beyond a reasonable doubt at trial;

28

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    e.    The right to confront and cross-examine witnesses against Defendant

2          at trial;

3    f.    The right to compel or subpoena witnesses to appear on Defendant's

4          behalf at trial;

5    g.    The right to testify or to remain silent at trial, at which trial such

6          silence could not be used against Defendant; and

7    h.    The right to appeal a finding of guilt or any pretrial rulings.

8    6.    **United States Sentencing Guidelines**.  Defendant understands and

9    acknowledges that the Court must consider the sentencing range calculated under the

10   United States Sentencing Guidelines, and possible departures under the Sentencing

11   Guidelines, together with the other factors set forth in Title 18, United States Code,

12   Section 3553(a), including:  (1) the nature and circumstances of the offense;

13   (2) Defendant's history and characteristics; (3) the need for the sentence to reflect the

14   seriousness of the offense, to promote respect for the law, and to provide just punishment

15   for the offense; (4) the need for the sentence to afford adequate deterrence to criminal

16   conduct; (5) the need for the sentence to protect the public from further crimes of

17   Defendant; (6) the need to provide Defendant with educational and vocational training,

18   medical care, or other correctional treatment in the most effective manner; (7) the kinds

19   of sentences available; (8) the need to provide restitution to victims; and (9) the need to

20   avoid unwarranted sentence disparity among defendants involved in similar conduct who

21   have similar records.  Accordingly, Defendant understands and acknowledges that:

22   a.    The Court will determine Defendant's Sentencing Guidelines range

23   at the time of sentencing;

24   b.    After consideration of the Sentencing Guidelines and the factors in

25   18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the

26   maximum term authorized by law;

27   c.    The Court is not bound by any recommendation regarding the

28   sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

Plea Agreement - 4
*United States v. Austin Hsu*, CR20-191-JLR

1  range offered by the parties or the United States Probation Department, or by any

2  stipulations or agreements between the parties in this Plea Agreement; and

3          d.       Defendant may not withdraw a guilty plea solely because of the

4  sentence imposed by the Court.

5          7.       **Ultimate Sentence**. Defendant acknowledges that no one has promised or

6  guaranteed what sentence the Court will impose.

7          8.       **Statement of Facts**. The parties agree on the following facts. Defendant

8  admits he is guilty of the charged offense:

> In March 2020, Congress enacted The Coronavirus Aid, Relief, and Economic Security ("CARES") Act to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic. Among other things, the CARES Act authorized the issuance of forgivable loans to small businesses through a program known as the Paycheck Protection Program ("PPP"). PPP loans were processed, and funded, by participating lenders. The loans were guaranteed by the Small Business Administration ("SBA"). PPP loans were forgivable if the borrowing business spent the loan proceeds on permissible expenses (such as payroll, mortgage payments, rent, and utilities) within a designated period, and used a certain percentage on payroll, specifically.
>
> To qualify for a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. That application required the authorized representative to make certain affirmative certifications, including representing the number of employees the business had and the business' average monthly payroll expenses. Applicants for PPP loans also were required to provide documentation showing their payroll expenses. The figures, and the accompanying documentation, were used to determine whether a business was eligible for a PPP loan, and, if so, the size of such loan.
>
> The Economic Injury Disaster Loan ("EIDL") program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected

1

2

3

by declared disasters.  The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

4

5

6

7

8

EIDL applications are submitted directly to the SBA. The amount of the loan, if the application is approved, is determined based, in part, on the information provided by the application about employment, revenue, and cost of goods.  If the applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

9

10

11

12

13

Between April 27, 2020, and July 12, 2020, Defendant, Austin Hsu, submitted fraudulent applications for nine disaster loans for five different businesses, namely Blueline Capital LLC ("Blueline"), Evergreen Forest Inc. ("Evergreen"), Huggtopus Corporation ("Huggtopus"), Prodigy Holdings PLLC. ("Prodigy"), and Sequoia West Corporation ("Sequoia").  The loans were:

14

15

16

17

18

19

20

21

22

23

24

25

26

27

| Applicant | Amount Sought | Lender | Result of Application |
|---|---|---|---|
| Sequoia | $54,627.97 | Square Inc. ("Square") | Approved |
| Prodigy | $105,451 | Kabbage Inc. ("Kabbage") | Approved |
| Evergreen | $133,275 | Kabbage | Approved |
| Huggtopus | $115,751 | Kabbage | Approved |
| Evergreen | $150,000 | SBA | Approved |
| Huggtopus | $150,000 | SBA | Canceled |
| Huggtopus | $150,000 | SBA | Canceled |
| Sequoia | $150,000 | SBA | Canceled |
| Blueline | $150,000 | SBA | Approved |

28

Plea Agreement - 6
*United States v. Austin Hsu*, CR20-191-JLR

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In applying for the loans of behalf of Evergreen, Huggtopus, Prodigy, and Sequoia, Hsu represented that each of these companies had employees to whom it paid salaries and payroll taxes.  Those representations were false.  None of the companies had any employees to whom it paid salaries or payroll taxes.

In addition, in submitting the PPP loan application on behalf of Sequoia to Square, Hsu provided a copy to Square of a supposed IRS Form 940 for Sequoia.  This form showed that Sequoia had paid a large amount, approximately $242,182.22, to employees in 2019.  Hsu also submitted a copy of a supposed IRS Form 941 for Sequoia, which showed it had paid another large amount, approximately $95,115, to employees in the first quarter of 2020.  In submitting the loan application of behalf of Prodigy to Kabbage, Hsu provided a copy to Kabbage of a supposed IRS Form 940 for Prodigy.  This form showed that Prodigy had paid a large amount, approximately $506,169, to employees in 2019.  These forms were fraudulent.  Hsu created them for the purpose of supporting the PPP applications.  None had actually been filed with the IRS (and the amounts of the tax deposits reported on the forms had not been paid to the IRS).

In addition, in submitting the PPP loan applications on behalf of Prodigy, Huggtopus, and Evergreen, Hsu submitted a copy of supposed Forms W-2 and W-3 for Prodigy, Huggtopus, and Evergreen.  These forms listed over twenty employees who purportedly worked for these businesses.  Nearly all of the names were the same.  These forms also were fraudulent.  Hsu created them for the purpose of supporting the PPP applications.  None had actually been filed with the Social Security Administration.  In creating these forms, he used the names of current and former employees from another business – Blackrock Services, P.A. – who had never actually been paid by Prodigy, Huggtopus, and Evergreen.

On June 26, 2020, Hsu incorporated Blueline for the purpose of applying for an EIDL loan.  On June 29, 2020,

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Hsu applied for an Employer Identification Number on behalf of Blueline using his mother's name.

On July 12, 2020, Hsu submitted an application with the SBA for an EIDL loan for Blueline in the amount of $150,000. Hsu represented to the SBA that Blueline had been in business since 2017 and that, as of January 31, 2020, Blueline had nine employees and gross receipts of over $1,500,000 million. These representations were false since Blueline had only been incorporated in 2020 and had no business or operations.

Based on the Blueline application, the SBA paid $149,900 of loan proceeds to Hsu's account ending in 6496 at Salal Credit Union. The process of issuing this payment caused an interstate wire from Denver, Colorado to Seattle, Washington, as part of the wire transfer in the amount of $149,900 from the SBA's bank account to Hsu's bank account at Salal Credit Union.

As part of the scheme, Hsu fraudulently applied for a total of $1,159,104.97 in PPP and EIDL loans. The total amount of PPP and EIDL loan proceeds that Hsu received from the six loans that were approved was $709,104.97.

In October 2020, the United States obtained seizure warrants and seized the amounts listed in the table below:

| Business | Loan | Amount Seized |
|---|---|---|
| Sequoia | • $54,627.97 paid into Blackrock Services' Bank of America Account -5116 | • $57,981.31 from Bank of America Account -5116 |
| Huggtopus | • $115,751 paid into Blackrock Services' Bank of America Account -5116 | |
| Prodigy | • $105,451 paid into Prodigy's Bank of America Account -6280 | • $26,620.87 from Bank of America Account -6280 |
| Evergreen | • $133,275 paid into Sequoia's Bank of America Account -9731 | • $133,275 from Bank of America Account -9731 |

Plea Agreement - 8
*United States v. Austin Hsu*, CR20-191-JLR

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Evergreen | • $149,900 paid into Evergreen's Umpqua Bank Account -1127 | • $149,900 from Umpqua Bank Account -1127 |
|---|---|---|
| Blueline | • $149,900 paid into Blueline's Salal Credit Union Account -6496 | • $149,900 from Salal Credit Union Bank Account -6496 |

Defendant subsequently paid $191,427.79 to the Clerk of Court, thereby ensuring that funds representing all the loan proceeds have been either seized or returned to the United States.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9.     **Sentencing Factors**.  The parties agree that the following Sentencing Guidelines provisions apply to this case:

a.     Defendant's offense is governed by § 2B1.1 of the Sentencing Guidelines;

b.     Defendant's base offense level is 7, pursuant to § 2B1.1(a)(1), because Defendant is pleading guilty to wire fraud, which is referenced to § 2B1.1 and has a statutory maximum of 20 years;

c.     Defendant's offense level is increased by 14 levels pursuant to § 2B1.1(b)(1)(H), because the loss exceeded $550,000, but did not exceed $1,500,000; and

d.     Defendant's offense level is increased by 2 levels, pursuant to § 2B1.1(b)(10), because the offense involved sophisticated means.

e.     As a result, Defendant's total offense level, prior to any adjustment for acceptance of responsibility, is 23.

Plea Agreement - 9
*United States v. Austin Hsu*, CR20-191-JLR

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Defendant understands, that at the time of sentencing, the Court is free to reject

2    these stipulated adjustments, and is further free to apply additional downward or upward

3    adjustments in determining Defendant's Sentencing Guidelines range.

4         10.    **Acceptance of Responsibility.**  At sentencing, *if* the Court concludes

5    Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant

6    to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will

7    make the motion necessary to permit the Court to decrease the total offense level by three

8    (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the

9    United States by timely notifying the United States of Defendant's intention to plead

10   guilty, thereby permitting the United States to avoid preparing for trial and permitting the

11   Court to allocate its resources efficiently.

12        11.    **Sentencing Recommendation**.  The United States agrees that it will

13   recommend a term of imprisonment that is no higher than the low end of Defendant's

14   sentencing range under the Sentencing Guidelines.  Defendant understands that this

15   recommendation is not binding on the Court and the Court may reject the

16   recommendation and may impose any term of imprisonment up to the statutory maximum

17   penalty authorized by law.   Defendant further understands that Defendant cannot

18   withdraw his guilty plea simply because of the sentence imposed by the Court.

19   Defendant shall be free to recommend any sentence, consistent with the law, that

20   Defendant believes is appropriate.  Except as otherwise provided in this Plea Agreement,

21   the parties are free to present arguments regarding any other aspect of sentencing.

22        12.    **Restitution.**  Defendant agrees that he will pay restitution to Square Inc. in

23   the amount of $54,627.97, to Kabbage, Inc. in the amount of $354,477, and to the United

24   States Small Business Administration in the amount of $300,000, for a total restitution

25   obligation of $709,104.97.  Defendant will receive credit for any amounts already paid by

26   him.  The parties agree that, after judgment, they will seek to apply amounts paid to the

27   Clerk of Court to restitution, and further request to apply seized funds to restitution

28   through restoration.

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  The full amount of restitution shall be due and payable immediately on entry of
2  judgment and shall be paid as quickly as possible.  If the Court finds that Defendant is
3  unable to make immediate restitution in full and sets a payment schedule as contemplated
4  in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents a minimum
5  payment obligation and does not preclude the U.S. Attorney's Office from pursuing any
6  other means by which to satisfy Defendant's full and immediately-enforceable financial
7  obligation, including, but not limited to, by pursuing assets that come to light only after
8  the district court finds that Defendant is unable to make immediate restitution.

9  Defendant agrees to disclose all assets in which Defendant has any interest or over
10  which Defendant exercises control, directly or indirectly, including those held by a
11  spouse, nominee, or third party.  Defendant agrees to cooperate fully with the United
12  States' investigation identifying all property in which Defendant has an interest and with
13  the United States' lawful efforts to enforce prompt payment of the financial obligations to
14  be imposed in connection with this prosecution.  Defendant's cooperation obligations are:
15  (1) before sentencing, and no more than 30 days after executing this Plea Agreement,
16  truthfully and completely executing a Financial Disclosure Statement provided by the
17  United States Attorney's Office and signed under penalty of perjury regarding
18  Defendant's and Defendant's spouse's financial circumstances and producing supporting
19  documentation, including tax returns, as requested; (2) providing updates with any
20  material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven
21  days of the event giving rise to the changed circumstances; (3) authorizing the United
22  States Attorney's Office to obtain Defendant's credit report before sentencing;
23  (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to
24  access records to verify the financial information; (5) authorizing the U.S. Attorney's
25  Office to inspect and copy all financial documents and information held by the U.S.
26  Probation Office; (6) submitting to an interview regarding Defendant's Financial
27  Statement and supporting documents before sentencing (if requested by the United States
28  Attorney's Office), and fully and truthfully answering questions during such interview;

Plea Agreement - 11
*United States v. Austin Hsu*, CR20-191-JLR

1  and (7) notifying the United States Attorney's Office before transferring any interest in

2  property owned directly or indirectly by Defendant, including any interest held or owned

3  in any other name, including all forms of business entities and trusts.

4       The parties acknowledge that voluntary payment of restitution prior to the

5  adjudication of guilt is a factor the Court considers in determining whether Defendant

6  qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).  In addition, in

7  any event, the government will consider Defendant's cooperation regarding restitution in

8  making its sentencing recommendation.

9       13.    **Forfeiture.** The Defendant understands that the forfeiture of property is

10  part of the sentence that must be imposed in this case. The Defendant agrees to forfeit to

11  the United States immediately his right, title, and interest in all property that constitutes

12  or is traceable to proceeds of his commission of Wire Fraud. All such property is

13  forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title

14  21, United States Code, Section 2461(c), and includes but is not limited to the following

15  funds and sum, representing proceeds the Defendant obtained from the offense:

16       a.    $149,900 in U.S. funds seized on October 27, 2020 from Umpqua

17             Bank account ending in 1127, held in the name of Evergreen Forest

18             LLC;

19       b.    $57,981.31 in U.S. funds seized on November 2, 2020 from Bank of

20             America account ending in 5116, held in the name of Blackrock

21             Services;

22       c.    $26,620.87 in U.S. funds seized on November 2, 2020 from Bank of

23             America account ending in 6280, held in the name of Prodigy

24             Holdings PLLC;

25       d.    $133,275 in U.S. funds seized on November 2, 2020 from Bank of

26             America account ending in 9731, held in the name of Sequoia West

27             Corp.;

28

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e.     $149,900 in U.S. funds seized on November 2, 2020 from Salal Credit Union account ending in 6496, held in the name of Austin Hsu; and

f.     a sum of money in the amount of $191,427.79, reflecting the unrecovered proceeds the defendant obtained from the offense.

With respect to the sum of money identified above in subsection (f), the Defendant understands and acknowledges this forfeited sum of money is separate and distinct from the restitution that is ordered in this case. The United States agrees, however, that it will request the Attorney General apply any amounts it collects toward satisfaction of this forfeited sum to the restitution that is ordered. The United States also agrees that any amount the Defendant pays toward restitution will be credited against this forfeited sum.

The Defendant agrees to fully assist the United States in the forfeiture of any forfeitable property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any property located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. The Defendant agrees not to file a claim to any of this property in any federal forfeiture proceeding, administrative or judicial, that may be or has been initiated, or to otherwise contest any federal forfeiture proceeding that may be or has been initiated. The Defendant also agrees he will not assist any party who may file a claim to this property in any federal forfeiture proceeding.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which the Defendant has any interest or control, if that property constitutes or is traceable to proceeds of his commission of Wire Fraud or was involved in his commission of Money Laundering.

14.    **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to

Plea Agreement - 13
*United States v. Austin Hsu*, CR20-191-JLR

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  prosecute Defendant for any additional offenses known to it as of the time of this Plea

2  Agreement based upon evidence in its possession at this time, and that arise out of the

3  conduct giving rise to this investigation.  In this regard, Defendant recognizes the United

4  States has agreed not to prosecute all of the criminal charges the evidence establishes

5  were committed by Defendant solely because of the promises made by Defendant in this

6  Plea Agreement.  Defendant agrees, however, that, for purposes of preparing the

7  Presentence Report, the United States Attorney's Office will provide the United States

8  Probation Office with evidence of all conduct committed by Defendant.

9       Defendant agrees that any charges to be dismissed before or at the time of

10  sentencing were substantially justified in light of the evidence available to the United

11  States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant

12  with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119

13  (1997).

14       15.    **Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that, if

15  Defendant breaches this Plea Agreement, the United States may withdraw from this Plea

16  Agreement and Defendant may be prosecuted for all offenses for which the United States

17  has evidence.  Defendant agrees not to oppose any steps taken by the United States to

18  nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

19  Agreement.  Defendant also agrees that, if Defendant is in breach of this Plea Agreement,

20  Defendant has waived any objection to the re-institution of any charges that previously

21  were dismissed or any additional charges that had not been prosecuted.

22       Defendant further understands that if, after the date of this Agreement, Defendant

23  should engage in illegal conduct, or conduct that violates any conditions of release or the

24  conditions of confinement (examples of which include, but are not limited to, obstruction

25  of justice, failure to appear for a court proceeding, criminal conduct while pending

26  sentencing, and false statements to law enforcement agents, the Pretrial Services Officer,

27  Probation Officer, or Court), the United States is free under this Plea Agreement to file

28  additional charges against Defendant or to seek a sentence that takes such conduct into

Plea Agreement - 14
*United States v. Austin Hsu*, CR20-191-JLR

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 consideration by requesting the Court to apply additional adjustments or enhancements in
2 its Sentencing Guidelines calculations in order to increase the applicable advisory
3 Guidelines range, and/or by seeking an upward departure or variance from the calculated
4 advisory Guidelines range.  Under these circumstances, the United States is free to seek
5 such adjustments, enhancements, departures, and/or variances even if otherwise
6 precluded by the terms of the Plea Agreement.

7       16.    **Waiver of Appellate Rights and Rights to Collateral Attacks.**
8 Defendant acknowledges that, by entering the guilty plea required by this Plea
9 Agreement, Defendant waives all rights to appeal from Defendant's convictions and any
10 pretrial rulings of the Court.  Defendant further agrees that, provided the Court imposes a
11 custodial sentence that is within or below the Sentencing Guidelines range (or the
12 statutory mandatory minimum, if greater than the Guidelines range) as determined by the
13 Court at the time of sentencing, Defendant waives to the full extent of the law:

14       a.    Any right conferred by Title 18, United States Code, Section 3742,
15           to challenge, on direct appeal, the sentence imposed by the Court,
16           including any fine, restitution order, probation or supervised release
17           conditions, or forfeiture order (if applicable); and

18       b.    Any right to bring a collateral attack against his convictions and
19           sentence, including any restitution order imposed, except as it may
20           relate to the effectiveness of legal representation.

21       This waiver does not preclude Defendant from bringing an appropriate motion
22 pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or
23 the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

24       If Defendant breaches this Plea Agreement at any time by appealing or collaterally
25 attacking (except as to effectiveness of legal representation) the convictions or sentence
26 in any way, the United States may prosecute Defendant for any counts, including those
27 with mandatory minimum sentences, that were dismissed or not charged pursuant to this
28 Plea Agreement.

Plea Agreement - 15
*United States v. Austin Hsu*, CR20-191-JLR

1    17.    **Voluntariness of Plea**. Defendant agrees that Defendant has entered into

2   this Plea Agreement freely and voluntarily, and that no threats or promises were made to

3   induce Defendant to enter a plea of guilty other than the promises contained in this Plea

4   Agreement or set forth on the record at the change of plea hearing in this matter.

5    18.    **Statute of Limitations**. In the event this Plea Agreement is not accepted

6   by the Court for any reason, or Defendant breaches any of the terms of this Plea

7   Agreement, the statute of limitations shall be deemed to have been tolled from the date of

8   the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the

9   Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach

10  of the Plea Agreement by Defendant is discovered by the United States Attorney's

11  Office.

12    19.    **Completeness of Agreement**. The United States and Defendant

13  acknowledge that these terms constitute the entire Plea Agreement between the parties,

14  except as may be set forth on the record at the change of plea hearing in this matter.  This

15  Plea Agreement binds only the United States Attorney's Office for the Western District

16  of Washington and the Fraud Section of the Criminal Division of the United States

17  //

18  //

19  //

20

21

22

23

24

25

26

27

28

Plea Agreement - 16
*United States v. Austin Hsu*, CR20-191-JLR

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Department of Justice.  It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

DATED:  this 21st day of January, 2021.

AUSTIN HSU
Defendant

BRENT HART
Attorney for Defendant


s/ Steven Masada
STEVEN T. MASADA
Assistant United States Attorney

DANIEL S. KAHN
Acting Chief
Fraud Section, Criminal Division
Department of Justice

s/ Christopher Fenton
By: CHRISTOPHER FENTON
Trial Attorney
Fraud Section, Criminal Division
Department of Justice

Plea Agreement - 17
*United States v. Austin Hsu*, CR20-191-JLR

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970