The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

               Plaintiff,

        v.

AUSTIN HSU,

               Defendant.

No. CR20-0191JLR

GOVERNMENT'S SENTENCING
MEMORANDUM

Comes now the United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, Steven T. Masada, Assistant United States Attorney for said District, Joseph Beemsterboer, Acting Chief, Fraud Section, Criminal Division, United States Department of Justice, and Christopher Fenton, Trial Attorney for said Section, and files this Government's Sentencing Memorandum.

## I.    INTRODUCTION

Defendant, Austin Hsu, is before the Court for sentencing following his guilty plea to one count of wire fraud, in violation of 18 U.S.C. § 1343. Hsu is scheduled to be sentenced at 10:00 a.m. on August 10, 2021.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. BACKGROUND

### A. The COVID-19 Pandemic and Disaster Relief Loan Programs

In early 2020, the COVID-19 pandemic spread rapidly across our country. What started as a public-health crisis rapidly also became an economic crisis. Large parts of the economy were shut down, businesses shuttered, and workers lost their jobs. By April 2020, the unemployment rate in the United States had reached 14.8%, *see* Congressional Research Service, Unemployment Rates During the COVID-19 Pandemic, fas.org/sgp/crs/misc/R46554.pdf, and millions of businesses faced the risk of failing.

To respond to the economic fallout, and prevent even worse disaster, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act). Pub. L. No. 116-136, 134 Stat. 281 (2020). One of the goals of the CARES Act was to help businesses make payroll and pay operating expenses (and thereby avoid failure). To that end, the CARES Act created a new government program, the Paycheck Protection Program (the PPP), to enable the issuance of loans, that ultimately could be forgivable, to small businesses in operation as of February 2020. *See* Presentence Report ¶ 8 [hereinafter, PSR].

Under the PPP, loans were processed and funded by participating lenders. *See id.* The loans were guaranteed by the Small Business Administration (the SBA), and ultimately would be forgiven if borrowers spent the loan proceeds on permissible expenses, including spending a substantial percentage on payroll. *See id.* To qualify for a PPP loan, a business was required to submit an application, and supporting documentation, that established, among other things, the number of persons employed by the business, and the amount of the business' payroll expenses. *See id.* ¶ 9.

The CARES Act originally appropriated $349 billion for the PPP. *See id.*; https://www.americanactionforum.org/research/tracker-paycheck-protection-program-loans/. This money was exhausted by April 16, 2020, causing the program to shut down for a time. *Id.* Congress appropriated another $320 billion to fund additional loans

GOVERNMENT'S SENTENCING MEMORANDUM - 2
AUSTIN HSU (CR20-0191JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(sometimes referred to as "round two") through August 8, 2020. *Id.* (A third round of funding followed in 2021.)

The Economic Injury Disaster Loan (EIDL) program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. PSR ¶ 10. In addition to the PPP, the CARES Act also authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. *Id.*

EIDL applications are submitted directly to the SBA. The amount of the loan, if the application is approved, is determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods. *Id.* ¶ 11. If the applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purposes as the PPP funds. *Id.*

**B. Austin Hsu's Fraudulent Scheme**

Hsu's monthly income is over $54,000. He drives a Porsche. And a Range Rover. PSR ¶ 62. Despite his wealth and privilege, amidst a national catastrophe, Hsu orchestrated a months-long scheme to steal COVID-19 disaster relief loan funds that the federal government designated for small businesses who needed the money to survive. Seeing opportunity in crisis, Hsu attempted to defraud the SBA and lenders of nearly $1.2 million before that money reached the small businesses who were actually suffering from the disaster. *Id.* ¶ 17. Hsu was successful in stealing $709,104.97 in money that would have otherwise been the lifeline for others in need. *Id.*

And he used a portion of that money to give himself and his girlfriend a massive pay raise. A comparison of his business's monthly payroll for the six months preceding the pandemic as compared to the first four months of the pandemic shows that Hsu gave himself a pay raise of nearly 1000% percent and his girlfriend a pay raise of around 450%:

GOVERNMENT'S SENTENCING MEMORANDUM - 3
AUSTIN HSU (CR20-0191JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Month | Total Payroll for Hsu | Total Payroll for Girlfriend |
|---|---|---|
| Sep-19 | $4,635 | $4,635.00 |
| Oct-19 | $4,635 | $4,635.00 |
| Nov-19 | $0 | $4,635.00 |
| Dec-19 | $0 | $4,635.00 |
| Jan-20 | $2,320.50 | $4,641.00 |
| Feb-20 | $0 | $4,641.00 |
| Mar-20 | $0 | $4,641.00 |
| Apr-20 | $20,523 | $4,641.00 |
| May-20 | $10,049.50 | $9,913.60 |
| Jun-20 | $25,141.65 | $25,657.84 |
| Jul-20 | $15,913.50 | $15,913.50 |

(*See* Exhibit A (excerpts from Intuit payroll records filtered to show payroll payments made to Hsu and his girlfriend[1]) (payroll payments made during pandemic highlighted in yellow).)[2]

Hsu's fraudulent scheme took place over the course of three months and required significant time and attention to perpetrate. From April 2020 through July 2020, Hsu prepared and submitted a total of eight COVID-19 disaster relief loan applications using the names of four companies he had previously formed. PSR ¶ 12; ECF 34 at 6. Hsu's loan applications contained numerous lies, and were accompanied by several different types of federal tax forms he had forged. For example:

■ Hsu represented that each of the four companies for which he sought a PPP loan had employees to whom it paid salaries and payroll taxes. This was false. None of the four companies had any employees to whom it paid salaries or payroll taxes. *See* PSR ¶ 13.

---

[1] In Exhibit A, the name of Hsu's girlfriend has been redacted.
[2] In the Presentence Report, Probation Officer Neumeister stated that it appears Hsu did not provide a complete picture of his finances because, among other things, he did not provide information relating to his businesses, which provide a source of income for Hsu and his live-in girlfriend. PSR ¶ 62.

GOVERNMENT'S SENTENCING MEMORANDUM - 4
AUSTIN HSU (CR20-0191JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

■ For two of the four companies, Hsu created IRS Forms 940 and 941 that purported to show that these companies had paid hundreds of thousands of dollars in salary to employees in 2019. This too was false. The companies had not paid the salaries shown, or the withholding to the IRS shown. Rather, Hsu had forged these documents for the purpose of supporting his fraudulent PPP applications. *See id.* ¶ 14; ECF 34 at 7.

■ Hsu also created fake Forms W-2 and W-3 for three of the four companies. These forms listed over twenty employees who purportedly worked for these businesses. These forms were also fraudulent. None had actually been filed with the Social Security Administration and none of the listed employees actually worked at these companies. Rather, Hsu created the Forms W-2 and W-3 for the purpose of supporting the fraudulent PPP applications. *See* PSR ¶ 14; ECF 34 at 7.

Two months into the scheme, after he had used the companies he had previously incorporated to apply for fraudulent PPP and EIDL loans, he invented new ways to continue the fraud. On June 26, 2020, Hsu incorporated a new company, Blueline Capital LLC ("Blueline"), for the purpose of applying for additional COVID-19 disaster relief loans. PSR ¶ 15. On June 29, 2020, he applied for an Employer Identification Number on behalf of Blueline. *Id.* And on July 12, 2020, Hsu applied for an EIDL loan for Blueline in the amount of $150,000. *Id.* ¶ 16. Hsu represented that Blueline had been in business since 2017, and as of January 31, 2020, had nine employees and gross receipts of over $1.5 million. *Id.* Blueline had in fact only been incorporated days prior, in late June 2020, and had no business or operations. *Id.*

In furtherance of his scheme, Hsu used, without authorization, the names of dozens of individuals whom he personally knew. Hsu used his mother's name to obtain an Employer Identification Number from the Internal Revenue Service for his sham company Blueline. *Id.* ¶15. Hsu also used the name and personal identifiers belonging to

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

his girlfriend, with whom he had lived for ten years, to apply for one of the PPP loans. Sentencing Recommendation at 3. As a consequence of Hsu's unauthorized use of their names, Hsu's mother and girlfriend became subjects of a federal criminal investigation and were interviewed by federal agents, and his girlfriend's entire home was searched.[3]

Hsu also used the names of over twenty current and former employees of one of his legitimate businesses on the fake Forms W-2 and W-3 he forged as part of his fraud. PSR ¶ 14. As a consequence of Hsu's unauthorized use of his former employees' names, Hsu potentially jeopardized any unemployment benefits to which these former employees may have been entitled.

Six of the nine COVID-19 disaster relief loan applications that Hsu submitted were approved and, as a result, Hsu received a total of $709,104.97 in fraudulent loan proceeds. *See id.* ¶ 17. As described above, Hsu used a large amount of the fraudulently obtained disaster loan proceeds to give himself and his girlfriend a significant pay raise. Beginning in or around July 2020, five employees who previously received payroll payments from Hsu's legitimate business began to receive periodic direct deposits for payroll from a different company belonging to Hsu. The balance of the fraudulently obtained PPP and EIDL proceeds remained in bank accounts owned and controlled by Hsu. Hsu did not actually spend the money, presumably, because (i) he did not have an immediate need for the money, and (ii) he planned later to submit fraudulent paperwork claiming the money had been spent on legitimate business expenses and did not want actually to spend the money until that paperwork was approved, the loans were forgiven, and the fraud scheme was effectively completed (since it would be risky to spend the money when he still might have to pay it back).

In October 2020, the United States obtained seizure warrants and seized a total of $517,677.18 from various bank accounts owned and controlled by Hsu. PSR ¶ 18. Hsu

---

[3] Evidence of the fraud scheme, belonging to Hsu, was located by authorities within his girlfriend's residence.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

subsequently paid $191,427.79 to the Clerk of the Court, which represented the balance of the funds that he fraudulently obtained and that had not been seized. *Id.*

### III. PRESENCE REPORT

The Government has no objection to the facts or to the Sentencing Guidelines calculation contained in the Presentence Report. The Presentence Report adopts the same calculation of Hsu's offense level that both parties agreed to recommend in the Plea Agreement. *See* Plea Agreement ¶ 9. Specifically, it recommends that the Court find that the following Sentencing Guidelines apply:

| | |
|---|---|
| Base offense level (§ 2B1.1(a)(1)) | 7 |
| Loss > $550,000 (§ 2B1.1(b)(1)(I)) | +14 |
| Use of sophisticated means (§ 2B1.1(b)(10)) | +2 |
| Acceptance of responsibility (§ 3E1.1(a) & (b)) | -3 |
| Total Offense Level | 20 |

Based upon a Total Offense Level of 20 and a Criminal History Category of I, Hsu has an advisory sentencing range of 33 to 41 months.

### IV. SENTENCING RECOMMENDATION

The Government recommends that the Court sentence Hsu to 33 months' imprisonment, to be followed by a three-year term of supervised release. The Government believes that this sentence appropriately balances the factors set forth in 18 U.S.C. §3553(a).

**1.** **"The nature and circumstances of the offense."** Hsu has committed an extremely serious offense. During a national catastrophe when the federal government and lenders were racing to get disaster relief loans out to small businesses and in turn wages to employees, who needed the money to survive, Hsu defrauded the government of more than $700,000 (and he sought to defraud the government of as much as around $1.2 million). Hsu's offense is aggravated by multiple factors:

■ First, Hsu was not threatened by the economic melt-down caused by COVID-19. While others lost their jobs, savings,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and businesses, Hsu's monthly income was over $54,000 and his live-in girlfriend's monthly income was over $4,000.

- Second, Hsu did not merely steal from the government. Rather, Hsu stole from a program designed to try to provide a lifeline to small businesses and their employees. This was a limited pool of money, which ultimately was exhausted. Hsu's crime deprived people who actually and urgently needed PPP loans of the ability to get them.

- Third, Hsu's crime was not a momentary lapse, but a determined ongoing effort. Hsu filed *nine* separate fraudulent loan applications over a three-month time period from April 2020 through July 2020. Each application required substantial work, including completing the actual loan application and, in many cases, creating fraudulent tax forms to support the fraud. For the last application, Hsu create an entirely new company in order to continue the fraud. The evolution in his *modus operandi* further demonstrates the time and effort be put into committing the fraud.

- Fourth, Hsu used the names of dozens of real people who he knew and that use had potentially serious consequences for their lives.

The impact of Hsu's crimes on the lives of others was substantial and should be reflected in the sentence imposed.

### 2. "The history and characteristics of the defendant."

Although Hsu has been productively employed throughout his adult life, does pro bono work, and has no prior criminal history, Hsu's statements about this offense are cause for concern. He does not appear to provide a coherent explanation to the Probation Officer of the motivation for his crime. For example, he claims he took a lot on trying to juggle three businesses and he applied for multiple loans. PSR ¶ 21. However, the businesses he used to apply for the loans did not actually have employees. He also claims that he panicked about the lack of PPP funds when his initial PPP application was denied. *Id.* However, this explanation makes no sense in light of the fact that he had no

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

urgent need for the PPP money and, when he received it, he used a large amount of it to give himself and his girlfriend a massive pay raise.

Perhaps more importantly, the letters of support submitted on Hsu's behalf show that he appears to have made a series of false and misleading statements to his friends and family about his crime. For example, Hsu's uncle recounts how Hsu told him that Hsu "submitted multiple applications hoping that one of them will be successful" and that Hsu "never expected that all applications would be approved and funded into his bank accounts". Letter from Michael Hsu dated July 19, 2021 at 2. Hsu's uncle further explains that Hsu sought the PPP money to cover "current urgent financial needs". *Id.* None of this true. Hsu filed the applications over the course of three months, not all at once. Moreover, after initial loan applications were approved, Hsu never made an effort to withdraw pending applications, but rather filed additional claims, including through the creation of a fictitious corporate entity. Nor did Hsu attempt to return duplicative loan funds before becoming alerted to the criminal investigation. Rather, Hsu used a large part of the money to give himself a massive pay raise, not to cover what he told his uncle were his business's "current urgent financial needs."

Similarly, Hsu apparently told Edward K. Le and Henry Kan that the purpose of the money was to fund his ongoing chiropractic business and help defray the costs of relocating an MRI machine. Letter from Edward K. Le dated July 21, 2021 and Letter from Henry Kan. These statements are also false. Hsu did not actually use the money for these purposes.

Hsu's friend Hung Le wrote that, because he was concerned his chiropractic business might go under, Hsu "lamented how his father was looking down on him now and how he failed his mother, who toiled all her life to pay for his education to get him to where he was." Letter from Hung Le at 1. If these were indeed Hsu's concerns, then he presumably would not have used his mother's name to fraudulently obtain a $150,000 EIDL loan he did not need and make her the subject of a federal criminal investigation as a result. Simply put, Hsu was an opportunist motivated by greed who, in disregard to the

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

real and considerable plight of others, sought to personally profit from an available emergency government program.

**3. The need for the sentence to "reflect the seriousness of the offense," "to provide just punishment," "to afford adequate deterrence," and "to protect the public."**

A significant prison sentence is required to reflect the seriousness of Hsu's crime, and to provide just punishment. As previously noted, despite his personal wealth and privilege, Hsu fraudulently applied for nearly $1.2 million dollars intended to provide a lifeline to small business and employees who were suffering as a result of the pandemic. Such conduct merits a significant sentence.

Hsu's case is one where a significant sentence also is needed to provide adequate deterrence, and to protect the public. We still are emerging from the COVID-19 pandemic. Massive amounts of money have yet to be funneled to their ultimate recipients. As that process continues, it is important that people understand that there are serious consequences for those committing fraud to steal money that should go to others. If a wealthy and privileged chiropractor can defraud a relief program of more than $700,000 without facing serious consequence, that message of deterrence will be undermined.

**4. The kinds of sentences available.** For the reasons already discussed, the Government believes that a sentence of imprisonment is needed in this case.

**5. The sentencing range.** The 33-month sentence that the Government is recommending is at the low-end of the parties' agreed sentencing range and the Government submits that this case falls within the heartland of cases contemplated by the Sentencing Commission, particularly in light of the nature of the loss and level of sophistication necessary to commit the crime.

**6. The need to avoid unwarranted sentence disparities among defendants.**

The 33-month sentence that the Government is proposing is consistent with sentences in other PPP cases. Although there have been a relatively limited number of

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

PPP and EIDL loan fraud cases sentenced so far, the Probation Office has collected a number of those cases in its Sentencing Recommendation. The Government also provided the Probation Office with two additional cases that were not covered in the Probation Office's Sentencing Recommendation. A review of PPP cases suggests that defendants who have committed substantial PPP frauds (that is, those measured in the hundreds of thousands to millions of dollars), generally have received sentences that are measured in years, and often have received sentences that approach or fall within the applicable sentencing Guidelines.

For example, in *United State v. Philus, et al.*, Case No. 1:21CR20067 (S.D. Fla.), the defendant, who was a small business owner whose business was suffering, conspired with his girlfriend to submit two fraudulent loan applications seeking a total of $688,325. Nearly all of the money was apparently returned and the defendant only received around $2,000 in personal benefit. He pled guilty to one count of conspiracy (18 U.S.C. § 371) and he was sentenced to 30 months' imprisonment.

In *United States v. Smith, et al.*, Case No. 20-CR-196 (E.D. Wis.), the defendant, who was a special education teacher with no prior criminal history, conspired with his brother Thomas to submit five fraudulent loan applications seeking $960,000. He pled guilty to one count of bank fraud and was sentenced to 36 months' imprisonment.

In *United States v. Tubbs,* No. 4:20-cr-00193-BSM (E.D. Ark.), the defendant obtained two PPP loans totaling $1,933,262, but only spent $14,000. She was sentenced to 41 months' imprisonment.

Here, Hsu submitted substantially more fraudulent loan applications than the defendants in *Philus*, *Smith*, or *Tubbs*, and sought an amount that was materially greater than in *Philus* and *Smith* and less than but comparable to *Tubbs*. Moreover, Hsu spent far more than the defendants in *Philus* and *Tubbs*, when he paid himself and his girlfriend a massive pandemic pay raise of around $90,000. The 33-month sentence that the Government is proposing is therefore consistent with sentences in other PPP and EIDL loan fraud cases with similar facts. Indeed, it is on the lower of the range in that the

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  sentence the Government recommends here is only three months greater than *Philus* and
2  is three months and eight months lower than in *Smith* and *Tubbs*, respectively.

3      The Government agrees with the Probation Office that this case is dissimilar from
4  *United States v. Boake Zhang*, No. 2:20-cr-00169-RAJ (W.D. Wash.), where defendant
5  was sentenced to just 60 days' imprisonment and should not be used as a comparable
6  here for all of the reasons the Probation Office sets forth in its recommendation.
7  Moreover, a sentence based on Zhang's case would create the very disparity that the
8  Court should seek to avoid and would create a situation where the defendants convicted
9  of PPP and EIDL fraud in this District receive sentences that are materially lower than
10  defendants convicted of the same or similar crimes in other districts.  By contrast, the 33-
11  month sentence the Government is recommending will avoid or minimize disparities with
12  other cases.[4]

13      **7.      The need to provide restitution to victims.**  As discussed in Part IV
14  below, the Government anticipates that the victim banks in this case will be paid
15  restitution by the restoration of the money seized by the Government.  As a result, the 33-
16  month sentence that the Government is recommending also will ensure that restitution is
17  paid to victims.

18      . . .

19      In sum, a 33-month sentence balances the considerations set forth in 18 U.S.C.
20  § 3553.  It will appropriately punish Hsu for stealing massive amounts of money from
21  programs designed to save others from disaster.  It will deter others from similarly
22  defrauding programs that continue to provide a necessary lifeline to struggling
23  Americans.  And it will treat Hsu fairly relative to the main run of defendants convicted
24  of COVID-19 disaster relief loan fraud in districts around the country.

25

26

---

27  [4] The Government agrees with the Probation Officer that a $25,000 fine is appropriate in this
28  case, so long as that fine is not in lieu of a sentence of imprisonment, which is important to
   deterring individuals, who like Hsu, have substantial wealth and privilege.

GOVERNMENT'S SENTENCING MEMORANDUM - 12
AUSTIN HSU (CR20-0191JLR)

# IV. RESTITUTION AND FORFEITURE

As set forth in the PSR, Hsu agrees that he will pay full restitution to the PPP lenders he defrauded (Square Inc. in the amount of $54,627.97 and Kabbage, Inc. in the amount of $354,477), and to the SBA in the amount of $300,000, for a total restitution obligation of $709,104.97. He will receive credit for any amounts already paid by him. The parties agree that, after judgment, they will seek to apply amounts already paid to the Clerk of the Court by Hsu to restitution, and further request to apply seized funds to restitution through restoration.

# V. CONCLUSION

For the foregoing reasons, the Court should sentence Hsu to 33 months' imprisonment, to be followed by a three-year term of supervised release. The Court also should order Hsu, to pay a $25,0000 fine, $709,104.97 in restitution, and a $100.00 penalty assessment. Further, as set forth in its motion (ECF 41), the United States further requests that the Court enter the proposed preliminary order of forfeiture.

DATED: this 2nd day of August, 2021.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/ Steven T. Masada*
STEVEN T. MASADA
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington  98101-1271
Telephone:    (206) 553-7970
Fax:              (206) 553-2502

GOVERNMENT'S SENTENCING MEMORANDUM - 13
AUSTIN HSU (CR20-0191JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

JOSEPH BEEMSTERBOER
Acting Chief

*s/ Christopher Fenton*
CHRISTOPHER FENTON
Trial Attorney
Fraud Section, Criminal Division
Department of Justice

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970